429 P.2d 513

**ALLRIGHT PHOENIX PARKING, INC.,**
**Appellant,**

v.

**Stephen SHABALA, Appellee.**

**No. I CA–CIV 179.**

Court of Appeals of Arizona.

June 22, 1967.

Harold Goldman and Charles H. Ripps, Phoenix, for appellant.

Richmond, Ajamie & Fay, by Richard E. Fay, Phoenix, for appellee.

STEVENS, Judge.

This case involves the liability of a parking lot owner for the loss of personal property in an automobile parked on the lot.

On 6 February 1963, at approximately 8:00 p.m., the plaintiff entered the defendant's parking lot, parked his automobile, locked it and paid the attendant his fee. The attendant gave the plaintiff a parking ticket which the plaintiff did not read and did not have at the time of the trial. A sample ticket was produced at the trial. It stated:

"LOT CLOSES AT 9:30 P.M.
IMPORTANT ... READ CAREFULLY

In consideration of the low rates charged for parking, customer agrees that parking operator will not be responsible for loss by fire, burglary or theft, except such loss be occasioned by negligence of operator, and then only up to a maximum value of $100. Proportionately greater rates must be paid in advance if customer sets larger limits of liability.

ARTICLES LEFT IN CAR AT OWNER'S RISK"

Even though there were available parking spaces on the street, the plaintiff chose the defendant's lot because of the "valuables" in his car. The plaintiff testified:

"A I told the Attendant that we were going to take in a movie and I asked him if the parking lot would be open when the theatre let out and he said yes, then I said, 'I have some things in the back of my car.' "

The parking lot was open and unfenced. It had signs posted at the entrance and the parking lot booth which gave notice that the lot closed at 9:30 p.m. The exact dimensions and locations of the signs were not definitely established at the trial. Also, the record is not clear as to the location and amount of lighting on the lot. At any rate, the plaintiff testified that he did not observe any signs.

The plaintiff returned to the lot at about 11:15 p.m. to find his car broken into and its contents missing. The attendant was not on duty and the lights in the booth were out.

The plaintiff brought an action against the defendant, alleging the defendant was liable under the theory of bailment. The trial court entered judgment in favor of the plaintiff for $650, the value of the articles, and the defendant appealed.

The parties are in substantial agreement as to the facts. The only question is in regard to the law and the application of the law to the facts. This is a case of first impression in Arizona. For this reason, we choose to look to the authorities of other jurisdictions for information and guidance.

The plaintiff cites in support of his position Parkrite Auto Park v. Badgett, 242 S.W.2d 630 (Ky.1951). In that case, the plaintiff presented his car to the defendant's lot, and received a parking ticket from the defendant which limited the de-

fendant's liability to $100 unless a higher consideration was paid. The plaintiff told the attendant that his car contained a large quantity of personal property and the attendant assured the plaintiff that his property would be safe. In holding the defendant liable under the theory of bailment the court stated that the trend is toward not limiting the bailees liability by a ticket unless attention is called to the ticket and the bailor has knowledge of its contents. We agree with this proposition. *Parkrite* is distinguishable from the present situation in that in *Parkrite* there was no mention of who parked the automobile (although it appears that the attendant did), or if the keys remained in it or if it was locked.

In Taylor v. Philadelphia Parking Authority, 398 Pa. 9, 156 A.2d 525 (1959), the plaintiffs were regular monthly parkers in the defendant's garage. The plaintiffs parked their automobiles, locked them and retained their keys. The plaintiffs left large quantities of expensive jewelry in them and the defendant had knowledge of this. One of the automobiles was stolen from the garage and later found with its contents missing. The plaintiffs alleged that the defendant violated a bailment contract in failing to return the automobile and its contents. The court stated:

"The characterization of the relationship as a bailment or a lease does not depend upon the physical structure of the place where the article is stored, as plaintiffs would have us hold, but rather it is based solely on whether the alleged bailor delivered the custody and control of the item to the bailee. * * * Since here plaintiffs reserved possession of the car at all times by retaining the keys thereto, defendant acquired no dominion over the vehicle nor any right to control removal of it; hence there was no bailment."

In Freeman v. Myers Automobile Service Co., Inc., 226 N.C. 736, 40 S.E.2d 365 (1946), the court discussed the relationships of license, lease and bailment, stating:

" * * * To constitute a bailment the bailee must have assumed the custody and possession of the property for another, and if there was only permission given, though for a reward, to park at any convenient place in the lot, without any assumption of dominion over the property or custody of it in any respect, the status created was a mere license. If a designated place on the lot was assigned to the owner of the car the status was that of a lease, but the status of bailment was not created under either circumstance.

 *   *   *   *   *   *

" 'To constitute a bailment there must be a delivery by the bailor and acceptance by the bailee of the subject matter of the bailment. It must be placed in the bailee's possession, actual or constructive. * * *'."

Giles v. Meyers, Ohio Com.Pl., 107 N.E.2d 777 (1952), involved the theft of articles in a vehicle parked on a large, open and unfenced baseball stadium parking lot. The plaintiff drove onto the lot, paid his fee, received a ticket, parked his automobile, locked it and took the keys. There was no evidence that the ticket had to be surrendered in order to get the car. The plaintiff did not notify the attendant of its contents. The court said:

"But where as in the present case the driver parks his own car, locks it, and takes the keys with him, these acts do not manifest nor do they constitute a transfer of custody of the car from the driver to the parking lot operator."

In Porter v. Los Angeles Turf Club, Inc., 40 Cal.App.Supp.2d 840, 105 P.2d 956 (1940), the plaintiff paid a fee, parked his automobile on the defendant's land and took his keys. The plaintiff could remove his car without surrendering the ticket. The ticket indicated that the management was not responsible for theft. The Court held:

" * * * Since here the plaintiff reserved at all times possession of the car in herself, defendant acquiring no dominion over the vehicle nor any right

to control removal of it, there was no bailment. Plaintiff, for the fee, acquired a mere license to park her car on defendant's premises. Defendant assumed no responsibility for safekeeping such car and is not liable for its theft or damage."

It is contended that the attendant's affirmative reply to the plaintiff's specific question as to whether the lot would be "open" imposed some liability on the defendant. The court was faced with a similar situation in Burcham v. Coney Island, Inc., 87 Ohio App. 352, 94 N.E.2d 280 (1949), in which the plaintiff asked the policeman—employee if he would "watch" the plaintiff's motor cycle and the policeman answered "yes". The court stated:

"* * * Just what the plaintiff expected by the use of the word 'watch' is not clear.

* * * * * *

"When the owner of a motor vehicle drives it into a parking lot, he must be aware that more than one relationship between the operator and himself may be created. The owner may be merely interested in securing a place to leave his vehicle, or he may also wish to secure its safety. It is only reasonable to require the owner of the vehicle to use reasonable measures to insure the acceptance of responsibility by the operator of the parking lot if the added burden of bailment is desired by the owner."

It is our opinion that the word "open" is subject to more than one interpretation. It could have meant that the lot would be attended until the movie let out or that it would be open so that the plaintiff could drive his automobile off the lot.

In view of the circumstances of this case, we hold that no bailment relationship existed between the plaintiff and the defendant and that the defendant was not liable for the loss of the personal property from the plaintiff's car. The automobile was never placed within the control and dominion of the defendant. The plaintiff neither delivered the car to the defendant nor did the defendant accept possession of it. The plaintiff was at best a licensee or a lessee. We do not decide in this opinion whether a change of one or more of the factual circumstances would have altered our conclusion. Each case must be viewed on its own individual facts.

The plaintiff contends that the defendant should have requested findings of fact and conclusions of law under Rule 52(a), Rules of Civil Procedure, 16 A.R.S. Since the parties agree as to the facts and the only question is whether or not a bailment existed, we do not deem it necessary to consider this contention.

The trial court is reversed with directions to enter judgment for the defendant.

CAMERON, C. J., and DONOFRIO, J., concur.