495 P.2d 512

**Sandra Jean BLAIR, Appellant,**

v.

**SAGUARO LAKE DEVELOPMENT COMPANY, Appellee.**

**No. I CA-CIV 1640.**

Court of Appeals of Arizona, Division 1.

April 6, 1972.

Rehearing Denied May 11, 1972.

Review Denied July 11, 1972.

Richmond, Ajamie, Fay & Warner by Richard E. Fay, Phoenix, for appellant.

Fennemore, Craig, von Ammon & Udall by Silas H. Shultz, Michael Preston Green and John D. Lyons, Jr., Phoenix, for appellee.

KRUCKER, Chief Judge.

Plaintiff, Sandra Jean Blair, purchased a used cabin cruiser. She then contacted defendant's agent, Al Funk, regarding mooring the boat and using defendant's facilities on Saguaro Lake. The plaintiff and several of her friends had just refinished the boat's hull and until the planks could swell sealing the hull, plaintiff had arranged to use the defendant's water pump. Mr. Funk had agreed to lend plaintiff the water pump without any charge. The plaintiff lived on the boat for approximately three weeks prior to its destruction and pumped it out as it became necessary. Because of this continual need for pumping, the boat was never assigned a slip or mooring place. It was moored at the service dock for two weeks and at the main dock thereafter.

On the evening of July 12, 1967, the plaintiff had planned to return to Phoenix to work in the bar which she owned. About 6:00 p. m., before leaving, she talked with Mr. Funk and asked him if he would check the water seepage in her boat during the time she would be gone. He agreed to do so and she told him where the keys would be hidden so that he might get into the cabin in order to check. About 1:30 a. m., July 13, Mr. Funk boarded the plaintiff's boat to check the water level. He discovered that the water level was not high enough to require pumping, but detected a "funny odor." He attempted at that time, without success, to determine exactly what the funny odor was and to discover its source. He then locked the boat and returned to his duties. Between Mr. Funk's departure

and the plaintiff's return at about 3:00 a. m., the boat was destroyed by fire. Upon discovering the boat was on fire, Mr. Funk and several Saguaro Lake employees made reasonable attempts to extinguish the fire but were unable to do so, and thereafter dragged the burning boat out into the lake so as not to endanger the dock and the other boats. There the boat exploded and was totally destroyed.

Plaintiff had been billed on July 1 for defendant's mooring services and following the destruction of the boat, she paid the amount for which she had been billed. She thereafter demanded the return of the boat from defendant, with which request defendant, of course, was unable to comply. Miss Blair then filed suit to recover damages for the loss of her property. The defendant filed a motion for summary judgment, which judgment was granted. Plaintiff's motion for a new trial and to vacate the judgment was denied, and it is from the order denying a new trial that plaintiff here appeals.

Plaintiff-appellant contends that there were genuine material factual issues which required a trial on the merits. Defendant here contends, of course, that there were no factual issues and that the trial court's decision on the law was correct and should be affirmed. The plaintiff contends that the facts above discussed amounted to a bailment which created a duty of care in the defendant. The defendant breached this duty by its negligence, which resulted in the destruction of plaintiff's boat for which the defendant must now be liable. She maintains that the bailment question is factual and should be left to the jury. We disagree. We find no major disagreement in the facts leading to the alleged bailment. Whether or not the facts created a bailment is clearly a question for the court and not a question of fact for a jury. Plaintiff further contends that an issue of material fact exists regarding defendant's negligence and that the theory of *res ipsa loquitur* should apply to save the action from summary judgment.

## BAILMENT

To constitute a bailment, there must be a delivery by the bailor of the subject goods and acceptance by the bailee of the goods, 8 Am.Jur.2d Bailments § 56, at 961; Allright Phoenix Parking, Inc. v. Shabala, 6 Ariz.App. 21, 429 P.2d 513 (1967). The bailment cases which we find most similar to the circumstances before us and therefore most persuasive are those commonly called the "parking lot cases." These cases generally fall into three categories: (1) Where an attendant simply collects a parking fee and designates a place to park and the automobile driver retains control of the automobile, locking it or not as he pleases; (2) where the attendant collects the parking fee, assumes control of the automobile, parks it himself, moves it as he needs to, retains the keys, and issues a ticket as a means of identification and a means for the owner to reclaim the automobile; (3) when the status of the parties falls somewhere between the above categories and whether or not there is a bailment is controlled by the nature of the circumstances within which the parties deal. Judge Stevens' opinion in *Allright,* supra, contains a good analysis of the requirements for delivery and acceptance under circumstances similar to those before us. Judge Stevens cited Freeman v. Myers Automobile Service Co., 226 N.C. 736, 40 S.E.2d 365 (1946), for its discussion of the relationships of license, lease and bailment. The court in *Freeman* said:

> "To constitute a bailment there must be a delivery by the bailor and acceptance by the bailee of the subject matter of the bailment. It must be placed in the bailee's possession, actual or constructive. [Citation omitted] 'There must be such a full transfer, actual or constructive, of the property to the bailee as to exclude the possession of the owner and all other persons and *give the bailee for the time being the sole custody and control thereof.'*" (Citations omitted) (Emphasis added) 40 S.E.2d at 366.

■ As pointed out in *Allright*, supra, each case must be decided on its own individual facts. We conclude that here a bailment was created. There was adequate delivery and acceptance to create a bailment during the brief time Mr. Funk was on plaintiff's boat. However, because of the nature of the bailment and the manner of the boat's destruction, we find that the granting of the motion for summary judgment was proper.

The discussion in 8 Am.Jur.2d Bailments § 307, at 1192, is pertinent to the nature of the bailment and accident before us. And § 315 of the same annotation also applies to the case *sub judice:*

"The weight of authority appears to support the rule that *no presumption or inference of a bailee's negligence arises as a matter of law from the mere fact that the property, while in his possession, was destroyed by fire. . . .*" (Footnotes omitted) (Emphasis added)

The Oregon Supreme Court in Hansen v. Oregon-Washington R. & Nav. Co., 97 Or. 190, 188 P. 963, rehearing denied at 191 P. 655 (1920), further supports our conclusion.

"If the bailee accounts for the injury or non-delivery of the chattel, by showing that it was stolen or that it was injured or destroyed by fire or by some other cause which is consistent with the exercise of ordinary care on his part, and does not of itself point to negligence by him, then he has established for himself a prima facie case of due care, has deprived the bailor's case of its prima facie quality, and has made it necessary for the bailor again to go forward with the evidence and affirmatively show some causal negligence on the part of the bailee. (Citations omitted)

"It must be remembered, of course, that the bailor may by his own pleading or evidence ascribe the injury or loss to a cause, such as fire, burglary, larceny, and the like, which is consistent with due care and thus relieve the bailee from the presumption of negligence. . . ." 188 P. at 970-971.

*See also,* Chaloupka v. Cyr, 63 Wash.2d 463, 387 P.2d 740 (1964); Moe v. American Ice & Cold Storage Co., 30 Wash.2d 51, 190 P.2d 755 (1948).

■ In the case at bar, the plaintiff (bailor) by her own pleadings has relieved the defendant (bailee) from the presumption of negligence. The defendant's prima facie case of due care having thus been established, it was incumbent upon the plaintiff to produce sufficient evidence that there was an issue and to show that evidence would be available to justify a trial of the issue. Plaintiff offered no evidence of defendant's negligence but claims that she was relieved of this burden by the doctrine of *res ipsa loquitur.*

## RES IPSA LOQUITUR

■ The following four elements traditionally have been required to invoke the doctrine of *res ipsa loquitur* from which an inference of negligence may be drawn:

1. The accident must be of a kind which ordinarily does not occur in the absence of someone's negligence.

2. It must be caused by an agency or instrumentality within the exclusive control of defendant.

3. It must not have been due to any voluntary action on the part of the plaintiff.

4. Plaintiff must not be in a position to show the particular circumstances which caused the offending agency or instrumentality to operate to his injury.

Eaton Fruit Co. v. California Spray-Chemical Corp., 103 Ariz. 461, 445 P.2d 437 (1968); O'Donnell v. Maves, 103 Ariz. 28, 436 P.2d 577 (1968); Capps v. American Airlines, 81 Ariz. 232, 303 P.2d 717 (1956); Walker v. McClanahan, 494 P.2d 725 (1972).

■ In the case before the court, elements three and four are clearly present and assuming *arguendo* that the required

"exclusive control" was satisfied, the doctrine is still inapplicable because of the nature of this accident. In Capps v. American Airlines, supra, the Arizona Supreme Court said of *res ipsa loquitur,* that:

> "The doctrine applies only where the physical cause of the injury and the attendant circumstances indicate such an unusual occurrence that in their very nature they carry a strong inherent probability of negligence and, in the light of ordinary experience the occurrence would presumably not have happened if those who had the exclusive management or control of the agency or instrumentality alleged to have caused the injury, had exercised proper care." 81 Ariz. at 234, 303 P.2d at 718.

A fire is not the type of accident which results only from someone's negligence. It is unnecessary for us to enumerate the various possible causes of the subject fire, which may have begun before, during or after Mr. Funk's presence on the boat, in order to rule out the doctrine of *res ipsa loquitur.*

Having undertaken to inspect the boat, Mr. Funk was under the duty to do so with the degree of care that a reasonably prudent man would exercise under the same circumstances. We find no indication that Mr. Funk failed in this duty.

We realize that if material fact questions exist or if material facts are uncertain, a summary judgment should not be granted. Boozer v. Arizona Country Club, 102 Ariz. 544, 434 P.2d 630 (1967). We find no uncertainty in the facts before us and find nothing to suggest the summary judgment was improper.

The judgment is affirmed.

HATHAWAY and HOWARD, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.